**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
Michael Paul Colon

FILED

OCT 22 2019

AT _____ O'CLOCK
John M. Domurad, Clerk - Albany

**Plaintiff(s)**

vs.

**Defendant(s)**
R-MA; David C. Wesley; R-MA Board of Trustees

Civil Case No.: 8 : 19 - cv - 1301

CIVIL COMPLAINT (LEK/ DJS)
PURSUANT TO
TITLE VII OF THE
CIVIL RIGHTS ACT,
AS AMENDED

)
)
)
)
)
)

Plaintiff(s) demand(s) a trial by: ☒ JURY    ☐ COURT    (Select **only** one).

## JURISDICTION

1.  Jurisdiction is conferred on this court pursuant to 42 U.S.C. § 2000e-5.

## PARTIES

2.  Plaintiff: Michael Paul Colon

    Address: 12 Walnut St. Apartment #2

    Potsdam, NY, 13676

    Additional Plaintiffs may be added on a separate sheet of paper.

3.  a.   Defendant:          Randolph-Macon Academy

    Official Position: _____

    Address:   200 Academy Dr

    Front Royal, VA, 22630

b.     Defendant: _____ David C. Wesley _____

Official Position: _____ President of R-MA _____

Address:   200 Academy Dr _____

Front Royal, VA, 22630 _____

_____

4.     This action is brought pursuant to:

[✔]   Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e *et seq.,* and the Civil Rights Act of 1991, for employment discrimination based on race, color, religion, sex or national origin.

[ ]   Pregnancy Discrimination Act of 1978, codified at 42 U.S.C. § 2000e(k), as amended, Civil Rights Act of 1964, and the Civil Rights Act of 1991, for employment discrimination based on pregnancy.

5.     Venue is invoked pursuant to 28 U.S.C. s 1391.

6.     Defendant's conduct is discriminatory with respect to the following (check all that apply):

(A)   [ ]   My race or color.
(B)   [✔]   My religion.
(C)   [ ]   My sex (or sexual harassment).
(D)   [ ]   My national origin.
(E)   [ ]   My pregnancy.
(F)   [✔]   Other: Sexual Orientation     .

7.     The conduct complained of in this action involves:

(A)   [ ]   Failure to employ.
(B)   [✔]   Termination of employment.
(C)   [ ]   Failure to promote.
(D)   [ ]   Unequal terms and conditions of employment.
(E)   [ ]   Reduction in wages.
(F)   [✔]   Retaliation.
(G)   [✔]   Other acts as specified below:
      Harassment _____

_____

8. **FACTS**

Set forth the facts of your case which substantiate your claims.  List the events in the order they happened, naming defendants involved, dates and places.

**Note: You must include allegations of wrongful conduct as to EACH and EVERY defendant in your complaint.**  (You may use additional sheets as necessary).

_____

_____

_____

See Attached
_____

_____

_____

_____

_____

_____


9. **CAUSES OF ACTION**

**Note: You must clearly state each cause of action you assert in this lawsuit.**

**FIRST CAUSE OF ACTION**

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000eet seq.
_____

_____

_____

_____

_____

## SECOND CAUSE OF ACTION

Title IX of the Education Amendments Act of 1972, 20 U.S.C. 1681, et seq

_____

_____

_____

_____

## THIRD CAUSE OF ACTION

Section 1983 of Title 42 of the United States Code, 42 U.S.C. §1983

_____

_____

_____

_____

10.   I filed charges with the New York State Division on Human Rights, the New York City
      Commission on Human Rights or Equal Employment Opportunity Commission regarding
      the alleged discriminatory acts on or about:

                          July 19th, 2019
                    _____
                          (Provide Date)

11.   The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue letter
      (**copy attached)** which was received by me on or about:

                          July 24th, 2019
                    _____
                          (Provide Date)

12.   The plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f).

13.   The defendant(s) is (are) an employer, employment agency, or labor organization within
      the meaning of 42 U.S.C. § 2000e(b), (c), or (d).

14.   The defendant(s) is (are) engaged in commerce within the meaning of 42 U.S.C.
      § 2000e(g).

15.  **PRAYER FOR RELIEF**

**WHEREFORE,** plaintiff(s) request(s) that this Court grant the following relief:

Punitive and Compensatory Damages; $1,500,000

I declare under penalty of perjury that the foregoing is true and correct.

DATED: _____10/19/2019_____

Michael P. Colon

Signature of Plaintiff(s)
(all Plaintiffs must sign)

02/2010

**Facts:**

On Oct 26, 2016 I resigned from my Science Teaching Position at Randolph-Macon Academy ("R-MA"). Additionally, my resignation was accepted—in writing—by the President of R-MA, Brig General David C. Wesely. This acceptance of my resignation was confusing. It was confusing due to a conversation that I had with the Dean of the Academy, Jonathan Ezell, and the results of that conversation. On October 17th, 2019, after receiving an email by my direct supervisor (Ms. LeWallen), pointing out my atheism and my perception of her criticizing it (a situation that I perceived she had done often), I submitted a resignation to two individuals: (1) Mr. Ezell and (2) Ms. Kara LeWallen (Chair of the Science Department). This resignation outlined several reasons for my resignation including my feeling of being discriminated against. However, despite submitting my resignation to Dean Ezell, Dean Ezell convinced me to stay. His exact words were: "you can't resign". Dean Ezell had convinced me that the discrimination that I had felt—and the other allegations that I had made—they were going to be investigated and handled appropriately. His reassurance, and his want for me to stay, made me feel valued. It made me feel that he was not on the same page as my direct supervisor, Ms. LeWallen, and her views regarding me being an atheist. Since that meeting with Mr. Ezell, I had not heard anything regarding my resignation letter and my employment continued as normal. On October 26th, 2016, during the last period of the day (5 minutes prior to the end of the day), I received a phone call from Gen. Wesley's secretary asking me to report to the General's office. Unsure what this regarded, I brought some of my recent exam results and the graphs of student performance comparing my classes to my colleagues' classes. I was very proud of my classes and had shared these same results a few days earlier with Mr. Ezell. Thus, I thought, this was a meeting regarding these results and maybe restructuring some of our introductory biology courses.

Upon arriving, I saw Mr. Ezell and Ms. Krista Peacock (Human Resources Director) standing in the doorway of Gen Wesley's office. I knew the conversation wasn't going to be about my classes' test results. Gen Wesley invites me in. We all sit and Gen. Wesley hands me a piece of paper. On this paper, among other statements, it states: "I accept your resignation, effective immediately". Perplexed, I looked at Mr. Ezell and stated something to the effect that I had thought my resignation had been refused. Gen Wesley, at this point looking confused, asked me something along the lines of what I had meant. I explained to Gen Wesley what had transpired. I explained that Mr. Ezell had rejected my resignation and that I thought everyone was on the same page regarding my concerns. Gen Wesley chuckled and said basically that he wasn't made aware of my conversation with Mr. Ezell. He further elaborated that Ms. LeWallen had dropped off the resignation letter to his office on the 17th after I had given it to her. This perplexed me—and I remembered his explanation well—because Ms. LeWallen's direct

supervisor was Mr. Ezell. Therefore, she bypassed her direct supervisor and went straight to the President of the institution.

Gen Wesley proceeded by chuckling. He stated this was odd as it seemed as though I rescinded my resignation. In which case, he said if I preferred, he'll "relieve" me. Knowing my contract with R-MA well, I asked him for a "cause". Gen Wesley refused to provide a "cause". After a few seconds of back and forth, he said that I have a choice: "resign" or be "relieved". He proceeded to ask if I understood the difference. To which I stated "yes". I elected to keep things "as is" and have him accept my resignation. He then tried to force me to sign the letter he had presented me (accepting my resignation). I refused. I refused because it tried to bar me from ever having contact with former students, parents, etc.; and so, I explained, I would not sign anything without an attorney present. Gen Wesley said "fine" and Mr. Ezell escorted me to my classroom to clear out my belongings. Meeting us at my classroom was another administrator, Col Link, who was responsible for student discipline and conduct. I found this odd—and concerning—as I was not a student and this should have been against my privacy rights.

After removing my belongings, I returned to my home (R-MA owned the property). I had 48 hrs to remove all of my belongings and move. It was close to 5 PM and I was devastated. I could not find a storage unit open. I began having parents and students messaging me. Apparently, many had saw me with Mr. Ezell and Col Link removing my belongings. They were concerned and so: I told them the truth. Later that evening, after the outpouring of support from students and parents, I elected to email Gen Wesley asking for him to reconsider. The next day, unknown to me, several students went to Gen Wesley's office asking him for an explanation. Gen Wesley had not emailed me until Oct 28th, 2019, but, in his response to my email, he did acknowledge how "several students" came to him appreciating my work. He wanted me to give him permission to tell the students his take on my resignation, etc.. He further reiterated that the resignation was to stay in place.

I did not give him permission to give students his "perspective". I refused because I was concerned about what Gen Wesley was going to say. I did give him the option of allowing us to both give students our perspective—in a joint meeting—but, he never agreed. After not receiving a favorable outcome, I did leave R-MA's provided housing. Concurrently, I emailed (Oct 31st, 2016) who I thought was the Chairman of the Board of Trustees (Mr. Silek). I explained the events that transpired requesting intervention. Mr. John Stufflebeem responds stating he was the "new" Chairman of the Board of Trustees cc'ing Gen Wesley. He responds that he supports Gen Wesley's decision and that the Board will not get involved in personnel matters. Looking up Mr. Stufflebeem, I realized he and Gen Wesley were from the same cloth and nothing I said would change Mr. Stufflebeem's mind. Mr. Stufflebeem had been a disgraced Director of Navy Staff—and removed—due to perjury while concurrently being demoted. Incidentally, given Mr.

Stufflebeem's history, I was positive that he would not care about what I alleged Gen Wesley did wrong.

These events caused me a great deal of duress and even led to me doing badly on a previously arranged exam called the BMAT (November 2nd, 2016). After taking the exam in Washington, D.C.—on November 2nd, 2016—I moved to my Aunt's house in New Rochelle, NY. I retained an attorney, Eileen Burger, who sent a Demand Letter dated November 30th, 2016 via email. This Demand Letter requested the remainder of my contract and a "cease and desist" with regards to retaliation and/or defamation per se. The retaliation and defamation per se was being conveyed to me by former students who stated Gen Wesley had made comments suggesting I was terminated for just cause and that the just cause was for "nefarious reasons".

I spent the entirety of November looking for a job. I traveled throughout the East Coast (from Maine to North Carolina) interviewing for various positions. Finally, on December 2nd, 2016, I obtained a Special Education Teaching job for a Rhode Island School District (Woonsocket). The Director of Special Education, Janet Sullivan, requested that I be paid starting on "Step #6". However, Dr. McGee (Superintendent) only agreed to Step #5 (approx.. $51,000/year).

Happy with this, I immediately accepted the offer of employment. Ms. Sullivan wanted me to start my position on Monday, December 12th, 2016. In order to start my position, I applied for an Emergency Certification (Special Ed and Science) and needed to lease a property in Rhode Island. I did both and moved to Rhode Island. I started my position on December 12th as Ms. Sullivan had asked. On December 19th, 2019, Mr. James Wolfgang (HR Director) and Ms. Sullivan came to Woonsocket High School and asked to meet with me after school. Mr. Wolfgang, during that meeting, informed me that the Superintendent will no longer recommend me for the position to the School Board. Confused, I kept asking why. Both he and Ms. Sullivan could not respond. As we stepped out into the Hall, Mr. Wolfgang took me aside. He informed me that R-MA had less than "kind things" to say about me. He said that during the school's "due diligence process", they contacted R-MA and that R-MA had made very concerning comments. He told me to go to the District Office and ask to see the Superintendent. He told me to plea my case and that he felt "terrible" this happened. Upon arriving at the District's Office, I asked to speak with Dr. McGee. Dr. McGee wasn't present and instead, Ms. Sullivan grabbed me and pulled me into her office. I immediately began to record the conversation (RI is a one-party consent State). Ms. Sullivan told me she was outraged and that she'd speak to the superintendent. She told me that she'd support me and fight for my application. Thanking her, I went to see Mr. Wolfgang again. I recorded him so that I had proof R-MA was behind this. Mr. Wolfgang again (this time on recording) confirmed R-MA was responsible for this.

That evening, I sent the recordings to my Attorney, Eileen Burger. My attorney immediately sent a "cease and desist" to R-MA. Jobless, I spent most of December and early-January looking for any job in Rhode Island. I was finally successful when I

obtained a Special Education job at Ocean Tides School on January 6th, 2017. However, my salary was only approximately $36,000/year compared to my previous salaries (R-MA, $49,000/year and Woonsocket, $51,784/year). This led me to be in a financial hardship. My rent was $1500/month, I was an hour away from Ocean Tides leading to costly tolls and transportation, oil was $800/bimonthly, electric $60/month, internet $60/month, and costly credit card bills due to legal expenditures. My expenses were greater than my income. In fact, my oil/electric was so expensive that some months (during the winter), I didn't have enough to buy oil to heat my home; I ate ramen and pasta for a month straight, because I had no money to buy food. In order to make ends meet, I took in two young men (17 turning 18 years old in March) as roommates. Each paid $1000/month. The young men were kicked out of R-MA for failing drug tests. I only knew one of the young men. The other one was a friend of his. Given their turbulent home life—and my need for money—I took them in. Their parents paid their rent and I was able to finally begin to stabilize.

R-MA's attorney, Josiah Black, did respond to my attorney on Dec 27th, 2016. He made several defamatory statements, but, most alarming, he confirmed the religious intolerance of his client. He stated that I "espoused [my] atheist and anti-military views". This confirmed their discriminatory behavior and led my attorney to suggest various methods of going forward.

In February 2017, one of the young men, who resided with me, went to Costa Rica during President's Week. His girlfriend, an R-MA student, contacted him alleging she was sexually assaulted and he should break up with her. Seeing this message—on his phone—I immediately contacted Front Royal's Police Department. I was morally obligated due to the mandatory reporter regulations. I told the police that I did not want to be involved. I explained that I had a turbulent history with R-MA and was currently seeking legal remedies. The police understood and began an investigation into these allegations. Next thing I know, my attorney reaches out to me claiming that R-MA's attorney sent a "Cease and Desist" demand letter to her. Confused, I read his letter and was petrified. He claimed that "State and Federal Law Enforcement" agencies were investigating me and my conduct. Simultaneously, in March of 2017, I learned of an email that Gen. Wesley had sent to parents. This email was sent to me by Tony Suslovich (a parent of a former R-MA student) on March 27th, 2017. The email suggested that I was a pedophile. Furthermore, it made other false allegations on how the two young men—previously mentioned—came to live with me.

Immediately, I retained a Defense Attorney—John Calcagni—in fear of the unknown allegations and in light of this email. I paid Mr. Calcagni with money that I didn't have (credit cards). This created a further hardship leading to me having to terminate my engagement with Ms. Burger. I could not afford to fight both on a civil and criminal front. Contractual law in VA is up to approximately six years and so, I made a conscious decision to revisit my civil case at a later date and focus on any allegations R-MA would have claimed.

After not receiving any information and/or briefing regarding investigations into me, I submitted a FOIA request to the Front Royal Police Department on 05/17/2017. The FOIA request was denied (*via* email) and I was unable to receive any information regarding what Mr. Black was talking about. It seemed like a cover up.

In August 2017, I moved from Rhode Island to Marshfield, WI after securing a position at The University of Wisconsin-Marshfield/Wood; the reason for the relocation was financial. Both young men (now 18) moved to WI with me. A third young man came and lived with me during this time as well. He came to live with me, because he and his parents were having a hard time; he had hit his mother and problems were escalating. He, too, was a former R-MA student. R-MA had expelled him due to him having a knife on campus. This young man needed to finish his senior year at Marshfield High School; he was 17 turning 18. This third roommate put me, again, in a good financial spot. It allowed me to pay off a great deal of my credit cards simultaneously allowing me to pay off some student loans/interest on student loans.Things went well in Marshfield. One of the young men wound up getting a full-time job at a distribution company. The other young man moved back with his family. The third young man was doing well in High School and was accepted into various colleges.

However, due to system mergers (announced in October 2017), I felt uncomfortable staying at Marshfield/Wood long-term; tenure processes were up in the air and I was nervous. I began to apply for University jobs in New York (closer to my family and friends). I wound up obtaining a position with the State University of New York-North Country Community College. However, prior to leaving for New York, one of the young men who originally lived with me in Rhode Island, also wanted to go to NY. But, he could not afford to go alone and he did not want to go alone. He tried to convince his friend to move with him to New York and be his roommate. This young man stopped living with me in Dec of 2017 once I got a second job as a Property Manager. He wound up staying at the place I rented originally, while I moved to the property that I was going to manage. When he tried to convince his friend to move with him to NY, I offered to help both of them get accepted into a SUNY school in NY; I told them they needed a plan and that they can't just relocate to a different State without a job and/or college lined up. The mother of the friend and I had a good relationship up until this point. She entertained the idea of the two young men going to college in NY, but, wasn't thrilled about it. I explained that I had no preference and if anything, I'd want them both to stay in WI as they were set up in WI. She agreed. But, because her son was interested, she did start to do her due diligence. She looked me up. She apparently called R-MA where R-MA once again made derogatory comments regarding me. This led to her becoming anxious and paranoid; a difference in text messages, etc. became apparent. She made several accusations against me and many of these accusations were identical to claims R-MA had made about me in the past. I was accused of trying to steal some minor, drug distribution, and pedophilia. I had my suspicions where she got these "concerns" from, but no proof at the time.

The police in Marshfield, WI got involved. Again, I was investigated; and, in less than a month, the investigation was closed. I was "exceptionally cleared". The following was discovered: (1) The young lady I was accused of trying to "kidnap", I didn't even know. Both her and her boyfriend admitted this. The police also concluded this. Apparently, the boyfriend tried to convince her to go to NY with him. This had nothing to do with me; (2) The police had no reason to suspect me of having an inappropriate sexual relationship with any of the young men I lived with. They even asked the young men directly. They even asked if the young men were held against their will. Of which, everything was denied and the police moved on; And, (3) There were no drugs.

I moved to NY in July of 2018 with one of the young men. The other one remained in WI with a successful full-time job; he had no plan and so, I refused to take him with me and/or help him get an apartment. The young man who came with me did have a plan. He enrolled at a SUNY college and did obtain a job.

I developed a passion for helping individuals who come from less than ideal situations. I began to really appreciate how much of a difference I made with each of these young men. Coming from a poor background myself—with a mother I'm estranged from and a father I never knew—I realized how just one parent can make that difference.

I decided I wanted to adopt a child of my own and give him/her the same opportunities I gave to these three young men; I wanted to focus on a child that will likely "age out" of our system (older than 13) and never be adopted. I applied for a foster care/adoption certification with the St. Lawrence Department of Social Services (DSS). After a year of undergoing this process, they contact R-MA. Gen Wesley specifically speaks to the DSS worker; please note, R-MA's process usually requires Ms. Peacock to answer employment questions regarding former employees. The fact that he, personally, speaks to my employment is unique with respect to R-MA procedures. He makes various claims reminiscent of the past. He states I was "terminated" for "just cause" and the "just cause" was for "nefarious reasons". The "nefarious reasons" are suggested to be pedophilia and/or drugs. He went out of his way to sabotage my applications by calling and emailing. DSS rejects my applications. Pursuant to my rights, I demand a fair hearing. I receive 52 emails from DSS with Gen Wesley where Gen Wesley suggests: (A) That I contacted the school anonymously regarding that 13 year old girl who was sexually assaulted in March 2017; (B) That I called him and told him that I was an anonymous emailer; (C) That, in fact, I "resigned" but that he was going to "terminate" me anyway and that I resigned rather than face the consequences of some investigation (he basically retracted what he said earlier); And, (D) Told them to do a FOIA request regarding me and Front Royal Police Department.

DSS did a FOIA request as Gen Wesley recommended. I finally received the police reports that I requested, originally, in May of 2017. Gen Wesley, in those police reports, covered up a 13-year old girl's sexual assault by a 17 year old young male. Even the 13-year-old girl's mother stated this was a cover up. He did this in order to preserve his and the institution's reputation. He distracted the police with false suspicions about me

rather than focusing on the sexual assault of the young 13-year-old girl. Interestingly, not one minor ever mentions my name to the police that is listed in the police report. My name is brought up solely by Gen Wesley. Gen Wesley claimed that I was "terminated for just cause" perjuring himself to the police. The same line he has repeatedly used whenever he has spoken about my separation with R-MA. In an email between him and one of the officers, he even had the officer convinced that I go child-to-child until the child becomes too old where I then, seek a younger child; this suggested I'm a pedophile. Gen Wesley even gave the police a computer tower that I used to work on for the hopes of finding pornographic material. However, just like with Marshfield Police Department, one month after Gen Wesley's accusations, the investigation into me is closed. Gen Wesley is made aware that there is nothing (with respect to text messages between I and students and/or any pornographic material with respect to the computer tower), but yet, he continues to make these same suggestions.

Also, noteworthy, Gen Wesley claims to DSS that I committed fraud by pretending to be the "father" of one of the young men living with me. He claims, to the DSS worker, that I misrepresented myself to obtain his transcripts from R-MA. However, evidence demonstrates that it was the young man's mother—in a written request—that requested the young man's transcripts and that I had nothing to do with it. On July 6th, 2019, I emailed members of the Board of Trustees at R-MA. I all but begged them to investigate Gen Wesley. Their response was to have Ms. Peacock (behind my back) send my email (July 8th, 2019) to the DSS worker. The purpose was clear: to request that the Administrative Judge overseeing my Fair Hearing regarding my Adoption/Foster Care certification rejections see this email for the purposes of hurting my case.

This did nothing as the decision to reject my application has now been retracted. But, it required me to hire an attorney and spend further legal fees to clear my name. R-MA's continuous harassment and targeting of me has not stopped over the last 3 years. This is why I am now pursuing my legal options.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 438-2019-01184 |

| Virginia Division of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| Dr. Michael P Colon | (914) 424-5541 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 8 Sharon Drive, Apartment #5, MASSENA SPRINGS, NY 13662 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| RANDOLPH-MACON ACADEMY | 101 - 200 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 200 Academy Dr, Front Royal, VA 22630 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE ☐ COLOR ☒ SEX ☒ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 09-02-2016   Latest: 09-02-2016
☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I had worked for Respondent in 2016. Since that time, over the past 3 years, I have been harassed by Respondent in that I have been accused of being involved with drugs/distribution of drugs and Respondent has also implied I am a pedophile. This has resulted in my being investigated by law enforcement agencies both local and Federal. I have been stalked and harassed and have most recently been denied my foster/adoption application. This is in retaliation for trying to exercise my rights with my attorney who in 2016 sent Respondent a Cease and Desist and Breach of Contract letter. I also believe I have been targeted because I am an Atheist and/or perceived gay.

I believe I have been targeted, harassed, and retaliated against due to my religion/Atheism and my gender/perceived sexual orientation in willful violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Digitally signed by Michael Colon on 07-19-2019 10:14 AM EDT | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1.   **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2.   **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3.   **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4.   **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5.   **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

Olympic Towers
300 Pearl Street, Suite 450
Buffalo, NY 14202
(716) 431-5007
TTY (716) 551-5923
FAX (716) 551-4387

Michael P Colon
8 Sharon Drive, #5
Massena Springs, NY 13662

Re:     EEOC Charge No.: 438-2019-01184
        Michael Colon v. Randolph-Macon Academy

Dear Mr. Colon:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission"), has reviewed the above-referenced charge according to our charge prioritization procedures. These procedures, which are based on a reallocation of the Commission's staff resources, apply to all open charges in our inventory and call for us to focus our limited resources on those cases that are most likely to result in findings of violations of the laws we enforce.

In accordance with these procedures, we have evaluated your charge based upon the information and evidence submitted.  You allege that you were targeted, harassed and retaliated against due to your religion/Atheist and your gender/perceived sexual orientation.

Based upon an analysis of the information submitted to us, the Commission is unable to conclude that the information establishes a violation of Federal law on the part of Respondent.  This does not certify that Respondent is in compliance with the statutes.  No finding is made as to any other issue that might be construed as having been raised by this charge.

The Commission's processing of this charge has been concluded. Included with this letter is your Notice of Dismissal and Right to Sue.  Following this dismissal, you may only pursue this matter by filing suit against the Respondent named in the charge within 90 days of receipt of said notice.  Otherwise, your right to sue will be lost.  Please contact Federal Investigator Maureen C. Kielt at (716) 431-5016 if you have any questions.

Sincerely,

Date:     JUL 2 4 2019

John E. Thompson, Jr., Director
Buffalo Local Office

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:     **Michael P. Colon**
        **8 Sharon Drive**
        **Apartment #5**
        **Massena Springs, NY 13662**

From:   **Buffalo Local Office**
        **300 Pearl Street**
        **Suite 450**
        **Buffalo, NY 14202**

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |  |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **438-2019-01184** | **Maureen Kielt,** Investigator | **(716) 431-5016** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

**John E. Thompson,**
**Local Office Director**

JUL 2 4 2019

*(Date Mailed)*

Enclosures(s)

cc:     **Krista R. Peacock**
        **Director Human Resources**
        **RANDOLPH-MACON ACADEMY**
        **200 Academy Dr**
        **Front Royal, VA 22630**

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS -- Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION -- Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE -- All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*